Argued and submitted August 4, reversed December 7, 1983

In the Matter of Shalawn, Shameka,
Tremaine Kennedy, Children.

STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
*Respondent,*

*v.*

KENNEDY et al,
*Appellants.*

(70,668; CA A26999)

672 P2d 1233

Mary L. Stasack, Portland, argued the cause and filed the brief for appellants.

William F. Nessly, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Deputy Solicitor General, Salem.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

YOUNG, J.

Gillette, P. J., dissenting.

## YOUNG, J.

The parents of a two-year-old son appeal from an order of the Juvenile Court finding that the child is within its jurisdiction because of conditions and circumstances endangering his welfare, ORS 419.476(1)(e), and ordering that the child be temporarily committed to the legal custody of the Children's Services Division (CSD). The child was taken into custody in Los Angeles at his and his parents residence on an arrest warrant, ORS 419.490(2), issued by the Oregon juvenile court. The child had not been previously adjudged to be within the jurisdiction of the Oregon juvenile court and had been in the custody of his parents since his birth. The central issue is whether the juvenile court acquired personal jurisdiction over the child. Our review is *de novo,* ORS 419.474, and we reverse.

The parents have three children, two girls and a boy. In October, 1980, the girls were made wards of the court and temporarily committed to the custody of CSD. At the time of that order, mother and her daughters were living in Oregon. The son was born in November 1980. Shortly after his birth, mother and son left Oregon and joined father in Los Angeles, where they have continued to reside.

The parents have returned to Oregon on at least two occasions for the purpose of "review hearings" concerning the wardship and circumstances of their daughters. In February, 1982, the parents attended such a hearing, during which the court observed that the parents were anxious to return to their residence in Los Angeles and directed them on their return to enroll in a "parental skill" program and to maintain regular telephone contact with their daughters and CSD. In July, 1982, another hearing was held. The court continued its wardship of the daughters, directed the parents to remain in Portland during August and September to undergo certain evaluations and scheduled another hearing for October, 1982.

On October 8, 1982, and before the scheduled October hearing, CSD filed a petition alleging that the parents had failed to return their daughters to CSD following an overnight visit and that the son was within the jurisdiction of the court because of conditions and circumstances endangering his welfare. Simultaneous with filing the petition, CSD sought a warrant for all of the children. The court issued a warrant on October 8, which was executed by California authorities on

October 13, at the parents' residence in Los Angeles, and the children were taken into custody. The children were then returned to Oregon, accompanied by a CSD worker. It is clear from the evidence that the parents and their son are California residents. There is no evidence that the son was physically present in Oregon when the petition was filed or when the warrant was issued.

The parents' motions to dismiss the petition for lack of personal jurisdiction over their son and to set aside the warrant were denied.

 It is axiomatic that the warrant has no legal effect in California. *See Carpenter v. Lord,* 88 Or 128, 132, 171 P 577 (1918); *see also State ex rel Juv. Dept. v. Casteel,* 18 Or App 70, 75, 523 P2d 1039 (1974). The gist of the state's argument is that, regardless of the child's residency, all that is required for personal jurisdiction over a child is the child's physical presence in court, ORS 419.492, the method by which the child's presence is obtained being irrelevant.

ORS 419.492 provides in part:

"If the child is before the court, the court has jurisdiction to proceed with the case notwithstanding the failure to serve summons upon any person required to be served by ORS 419.486, except that:

"* * * * *

"(3) If it appears to the court that a parent or guardian required to be served by ORS 419.486 was not served as provided in ORS 419.888, or was served on such notice that he did not have a reasonable opportunity to appear at the time filed, the court shall, upon petition by the parent or guardian, reopen the case for futher consideration."

The statute simply authorizes the court to proceed, even though it lacks personal jurisdiction over the parents. Rather than providing for personal jurisdiction over the child, it presupposes personal jurisdiction. Judge Holman explained the jurisdictional basis of the juvenile court:

"* * * the juvenile court does two things: (1) it makes an adjudication about the child apart from his relationship to his parents; (2) it makes an adjudication about the child's relationship to his parents. In the first adjudication, the court determines the child's conduct or condition to be such that society requires protection from him, or that society must give

him protection, or both. * * * The jurisdictional basis for the state to act in making this sort of an adjudication is simply the presence of the individual." Holman, Oregon's New Juvenile Code, 39 Or L Rev 305, 308 (1960).

The question becomes whether the child was "present" within the meaning of the juvenile code.

We conclude that *presence,* in the factual context of this case, means the *physical presence of the child in the state when the child is taken into temporary custody.* ORS 419.569 provides in part:

"(1) A child may be taken into temporary custody by a peace officer, counselor, employe of the Children's Services Division or by any other person authorized by the juvenile court of the county in which the child is found, in the following circumstances:

"* * * * *

"(b) Where the child's condition or surroundings reasonably appear to be such as to jeopardize his welfare.

"* * * * *."

ORS 419.573(1) provides:

"Except as provided in ORS 419.579, the jurisdiction of the juvenile court of the county in which a child is taken into temporary custody shall attach from the time the child is taken into custody.

"* * * * *."

ORS 419.579 provides in part:

"(1) Where a child residing in some other county is taken into temporary custody the child may be:

"* * * * *

"(b) Delivered to a peace officer or juvenile counselor in the county in which the child resides * * *."

When cause exists, ORS 419.569, those statutory provisions authorize taking a child, whether a resident or nonresident, into temporary custody in any county where he may be found within the state. Jurisdiction attaches at the time the child is taken into custody. ORS 419.573(1). There is no statutory provision establishing personal jurisdiction over a non-resident child who is not a ward of the court and is taken into custody outside the state.

■ ORS 419.486 and ORS 419.488, when considered together, also support the conclusion that the legislature did not intend to confer personal jurisdiction over a non-resident child in the legal custody of his parents who is taken into custody in another state. ORS 419.486 names those individuals who must be served with summons after a petition is filed. ORS 419.486(3) and (4) provide:

> "(3) The summons shall require the person or persons who have physical custody to appear personally and bring the child before the court.

> "(4) If the child is not in the physical custody of both parents, or the child's only living parent, or, if both parents are dead, the child's guardian, then summons shall also be issued to the parent or parents or guardian * * *."

ORS 419.488(2) provides for out-of-state service:

> "If any parent or guardian required to be summoned as provided in *ORS 419.486(4) cannot be found within the state,* summons may be served on the parent or guardian in any of the following ways. * * *" (Emphasis supplied.)

The statute provides for out-of-state service only when the parent or guardian does not have physical custody of the child. The compelling inference is that the child must be within the state before summons issues.

■ Under the juvenile code, personal jurisdiction over a child in a dependency[1] proceeding is proper when the child is a resident or a non-resident who is taken into custody within the state. Once jurisdiction is established, it continues, even if the child leaves the state.[2] The juvenile code does not provide

---

[1] When a child commits a crime and flees the state, ORS 419.477 provides for extradition under ORS 133.743 to 133.857.

[2] ORS 419.531 provides:

"The court's wardship over a child brought before it continues until whichever of the following occurs first:

"(1) The court dismisses the petition concerning the child or remands the case to the appropriate court handling criminal actions, or to municipal court. If the court has wardship of a child based upon a prior petition, remanding the child to the court handling criminal actions, or to municipal court in connection with a subsequent violation of a law or ordinance relating to the use or operation of a motor vehicle does not terminate the wardship, unless the court so orders.

for the establishment of personal jurisdiction over a child by the filing of a petition and the issuance of an arrest warrant for a non-resident child in the lawful custody of his parents in California. To rule otherwise would enable the juvenile court to "roundup" dependent children in every other state merely upon the filing of a petition in this state and the issuance and execution of a warrant in a sister state. We are satisfied that the legislature did not intend that result. The denial of the motion to dismiss the petition for lack of personal jurisdiction was error.

Reversed.[3]

**GILLETTE, P. J.,** dissenting.

I share the majority's concern over the use of improper process in this case. However, I find that subject to be beside the point, now that the child is physically in Oregon. I therefore respectfully dissent.

The question before us is a simple one: does a juvenile court have jurisdiction over the person of a child when a petition alleging jurisdiction, valid on its face, has been filed and the child is physically before the court? The majority seems to believe this question may be answered by focussing on the time the child was taken into temporary custody. The majority says:

"* * * The question [is] whether the child was 'present' within the meaning of the juvenile code.

"We conclude that *presence* in the factual context of this case means the *physical presence of the child in the state when the child is taken into temporary custody.* * * *" (Emphasis in original). (Slip opinion at 4).

The majority then goes through an analysis of the statutes governing when a child may be taken into temporary custody, doing so obviously on the theory that these statutes define the

"(2) The court transfers jurisdiction over the child as provided in ORS 419.479, 419.547 or 419.549.

"(3) The court by order terminates its wardship.

"(4) A decree of adoption of the child is entered by a court of competent jurisdiction.

"(5) The child becomes 21 years of age."

[3] This disposition makes it unnecessary to consider the remaining assignment of error.

outer limits of juvenile court jurisdiction. 66 Or App at 94. The majority summarizes its research thusly: "There is no statutory provision establishing personal jurisdiction over a nonresident child who is not a ward of the court and who is taken into custody outside the state." 66 Or App at 93.

That is true, but irrelevant. The issue in this case is not whether there is statutory authority to take the child into temporary custody outside the state—no one suggests there is. Rather, the issue is: once that has occurred without authority, and the child has been brought back to Oregon, may jurisdiction be exercised? The majority does not seem to see that this separate question is the pertinent one.

For my part, the answer is simple: It is the child now in our state with whom we are first and foremost supposed to be concerned. The child is here; a petition valid on its face alleging circumstances endangering the child's welfare has been filed; there is jurisdiction. The remedies of the parents for improper use of process—if any—must be found elsewhere. I would affirm the juvenile court.

I respectfully dissent.